# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| ALFRED H. LOCKHART, JR. | : | CIVIL ACTION |
| v. | : | No. 05-127 |
| GOVERNMENT OF THE | : | |
| VIRGIN ISLANDS, et al. | : | |

## MEMORANDUM

**Juan R. Sánchez, J.**                                                              **August 3, 2009**

      Defendants the Virgin Islands Government, Police Department, and its deputy chief and police officers in their official and individual capacities, move for summary judgment on all claims by Plaintiff Alfred H. Lockhart, Jr., contending his allegations of federal civil rights violations and conspiracy to cover-up the alleged violations, and various common law tort injuries are time-barred or otherwise not actionable. Plaintiff opposes the motion, asserting he timely presents genuine disputes of material fact. I agree with Defendants, granting judgment in their favor on all claims and dismissing this action with prejudice.

## FACTS

      This action arises from a police investigation of domestic violence in the home of Alfred H. Lockhart, Sr. and his wife, Dorothy A. Lockhart, on August 12, 2003, during which their son, Alva J. Lockhart, was shot. He was pronounced dead on August 13, 2003, at 12:00 a.m.

      Alva, also known as "Baboo," lived in a downstairs apartment with his minor daughter, Tenese Lockhart, whose mother is Alva's former wife, Hyacinth Martin Lockhart. At the end of the workday on August 12, 2003, Hyacinth visited Alva and Tenese, but after Alva put a gun to her head during a verbal dispute, she returned to her own home. During a later phone conversation with Alva, she heard gunshots being fired and Tenese scream. During a separate phone call with Alford

Lockhart, who was in the Lockhart residence, Hyacinth heard another gunshot.

Hyacinth reported gunshots to 911. She also reported Alva had pulled a gun on her and asked police to remove her daughter from the residence. She asked police to do so because she believed Alva intended to kill her, Tenese, and then himself. She would not tell 911 where she was, fearing Alva might find and hurt her.

After Alva fired a gun in front of Tenese, Tenese rushed upstairs to her grandparents' bedroom, taking shelter in a bathroom. Alva went to his parents' bedroom. His mother, Dorothy, would not open the door until he assured her he did not have a gun. After Dorothy opened the door, he fired his gun. The shot traveled into the bedroom where his father and daughter were. Other family members knew Alva had fired gunshots, threatening others in the house. Emanie K. Mollah, who lived upstairs with her mother, Alaine Lockhart-Mollah, and father, Eric Mollah, told her mother she called 911.

Based on 911 calls, Central Dispatch sent out radio-transmissions around 9:50-9:57 p.m., asking officers to travel to a family disturbance at the Lockhart residence, and alerting them shots had possibly been fired. Some minutes later, Central Dispatch alerted officers shots had been fired, Alva was the suspected gunman, and hostages might be at risk in the house.

Officers Rosalyn Pinney and Charles Gumbs responded first, encountering a man and woman upstairs at the entrance door, who said no shots had been fired, nothing was wrong, and they did not need police assistance. Upon noticing both had blood on them, the officers were not persuaded, suspecting something had happened. Pinney told the man and woman she "needed to see everyone in the house to make sure that everybody was okay."[1] Officers were allowed inside and were shown

---

[1] Rosalyn Pinney 5/7/09 N.T. 39:16-19.

2

around in a "sweep" of the rooms upstairs, checking for any injured occupants. When they reached the senior Lockharts's bedroom, Dorothy and Tenese told Pinney Alva had fired shots. Tenese told Pinney her father was going to kill her mother. Because officers found no one injured, saw no guns, and heard no guns being fired, they left the house, joining responding officers outside, including Officers Dean Chinnery, George Greene, and Donald Liburd, among many others.

After Liburd arrived, Central Dispatch radioed him and then patched Hyacinth through to his cell phone. Hyacinth told Liburd her daughter and in-laws were locked in a bedroom because Alva fired gunshots in the house. Officers Pinney, Gumbs, Greene, Liburd, and others were allowed back upstairs to investigate.

The officers faced a volatile, potentially violent domestic disturbance. When Alaine took the officers to her parents' bedroom, they found the door locked and barricaded with a chest of drawers. After the door was opened, Alfred, Sr. and Dorothy told officers Alva had fired a gun in front of them and they were afraid he was still in the house. Tenese told Greene her father had fired shots at her and was trying to kill them. Dorothy said she wanted her son arrested. They showed officers bullet holes in their bedroom wall from Alva's gunshot. At some point, Liburd and other officers escorted Alfred, Sr., Dorothy, and Tenese out of the house.

While Officers Pinney, Gumbs, Greene, Liburd, and others secured the upstairs, a number of officers outside the house located Alva in his downstairs apartment. Officer Melvin Boynes talked to Alva through the door, telling him to turn over his gun and come out. Alva replied he was coming out. The officers were waiting when they heard gunshots. There is no genuine dispute

3

Officer George Greene shot him on August 12, 2003,[2] after Alva had spoken to Boynes and then had walked upstairs by an interior staircase.

After officers had arrived around 10:00 p.m. on August 12, 2003, Dorothy called another son, Alfred H. Lockhart, Jr. who did not live with his parents, asking him to come to their house. Alfred, Jr. arrived to find several police cars in the yard. Although he did not know it at the time, Officer Greene had just fired his gun twice at Alva.

Alfred, Jr. entered the livingroom upstairs and saw three officers with guns drawn, pointed down the hallway. Officer Chinnery, who was kneeling in the center of the room with his gun raised in the air, told him, "Baboo is down there."[3] Alfred, Jr. tried to go down the hall to aid his parents and Alva. Deputy Chief Fahie stopped him, warning, "Your life is in danger."[4] Alfred, Jr. replied, "That's my life."[5] For some minutes, Alfred, Jr. verbally confronted Fahie, during which exchange Fahie said more than once, "Mister, you're interfering with police work."[6] Alfred, Jr. retorted,

---

[2]Plaintiffs attempt to manufacture a dispute on this point, contending Special Operations Bureau officer(s) shot Alva. *See* Pls' Resp. to Defts' Stmt Undisputed Facts ¶ 9. Plaintiffs rely on Deputy Chief Elvin Fahie's testimony, 5/13/09 N.T. 34:25-37:13, however, his testimony does not support a reasonable inference in favor of Plaintiffs' conclusory assertion. Also, the Estate pled George Greene shot Alva. Am. Comp. 05-126 ¶¶ 26, 35. There is no genuine dispute about whether Greene shot Alva. *See Schoonejongen v. Curtiss-Wright Corp.*, 143 F.3d 120, 130 (3d Cir. 1998) (holding if no reasonable jury could find in the nonmoving party's favor based on the record as a whole, concerns regarding the credibility of witnesses cannot defeat summary judgment).

[3]Alfred H. Lockhart, Jr. 5/14/09 N.T. 42:9-24, 46:13-20.

[4]Alfred H. Lockhart, Jr. 5/14/09 N.T. 64:13-65:9.

[5]Alfred H. Lockhart, Jr. 5/14/09 N.T. 64:13-65:9.

[6]Alfred H. Lockhart, Jr. 5/14/09 N.T. 43:7-11, 44:2-6, 48:5-7.

"Mister, you rather take a life than save a life."[7] Alfred, Jr. then moved to go down the hall, persisting in his efforts to "quell"[8] the situation himself. Fahie handcuffed him and ordered officers to put him in a police car. Officer Boynes removed Alfred, Jr. from the house and sat him in a police car. He was released from the car after Alva was taken from the home in an ambulance.

Fahie restrained Alfred, Jr. for the safety of everyone at the premises. Alfred, Jr.'s mere presence "put the life of other people in danger, himself and the officer[s]."[9] The officers knew Alva was armed. They could not rule out the possibility Alfred, Jr. might be taken hostage or might pick up a gun himself if he were allowed to go down the hall.

Fahie warned Alfred, Jr., "he was creating a disturbance and if he don't remove himself from the upper level, interfering with the officers performing their duties, obstructing and delaying, that he would be arrested."[10] Alfred, Jr. admits he was warned many times and Fahie was "probably trying to protect me."[11] Fahie and Boynes put him in a police car because "that was the safest place at that time . . . for his safety and where he would not be interfering with the performance of our duty."[12] He was not charged with any crime.

Alfred, Jr. complains Fahie "snapped" the handcuffs on him "like he didn't care," "with

---

[7] Alfred H. Lockhart, Jr. 5/14/09 N.T. 50:10-15.

[8] Alfred H. Lockhart, Jr. 5/14/09 N.T. 45:6-7, 46:5-6.

[9] Elvin Fahie 5/13/09 N.T. 31:2-6.

[10] Melvin Boynes 5/7/09 N.T. 54:12-15.

[11] Alfred H. Lockhart, Jr. 5/14/09 N.T. 43:6-11, 44:2-9, 48:5-7, 64:13-65:21, 124:15-20.

[12] Melvin Boynes 5/7/09 N.T. 65:7-16.

5

anger,"[13] and alleges the handcuffs injured some fingers of his left hand. Alfred, Jr. admits he never told the officers his handcuffs were too tight and never asked anyone to loosen them. He was handcuffed less than two hours and fifteen minutes at the most, and probably far less.

In these consolidated actions, Plaintiffs argue Defendants engaged in a conspiracy to deprive them of rights guaranteed under § 1983. Plaintiffs allege the conspiracy began when Officer Greene shot Alva on August 12, 2003, and continued into and beyond August 13, 2003.[14] Alfred, Jr. alleges Defendants handcuffed and confined him in a police car to facilitate their alleged cover-up of Alva's unjustified shooting.[15] Administratrix Alaine Lockhart-Mollah testified Plaintiffs' conspiracy claims are based exclusively on "information and belief."[16]

**DISCUSSION**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). After one party has filed a properly supported summary judgment motion, the party opposing it must present sufficient evidence for a reasonable jury to find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-52 (1986). The party opposing the motion must demonstrate a genuine dispute over facts affecting the outcome of the claim. *Id*. at 248.

Where there is a complete failure of proof concerning an essential element of the nonmoving

---

[13] Alfred H. Lockhart, Jr. N.T. 5/14/09 83:4-5.

[14] Am. Comps., 05-125 ¶ 60; 05-126 ¶ 55; 05-127 ¶ 57.

[15] Am. Comp. 05-127 ¶ 49, 50.

[16] Alaine Lockhart-Mollah 4/27/09 N.T. 109:11-113:17.

party's case, all other facts are rendered immaterial. The moving party is entitled to summary judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element with respect to which it has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party with the burden of proof on a dispositive issue at trial to "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts, showing that there is a genuine issue for trial.'" *Id*. at 324.

Defendants contend Alfred, Jr.'s 42 U.S.C. § 1983 civil rights and conspiracy claims are barred by the Virgin Islands' two-year statute of limitations applicable to personal injuries, 5 V.I.C. § 31(5)(A), or are otherwise not actionable. I agree.

Alfred, Jr. alleges Defendants violated his constitutional rights to be free from false arrest and imprisonment, cruel and unusual punishment, and be "secure in his person."[17] He advances Fourth and Eighth Amendment claims based on the theories of unreasonable seizure and use of excessive force. He also alleges Defendants violated his rights to due process under the Fifth and Fourteenth Amendments by engaging in a cover-up.[18]

Alfred, Jr. recasts his Fourth Amendment theories of unreasonable seizure and use of excessive force as a substantive due process claim under the Fifth and Fourteenth Amendments, but his allegations are insufficient to proceed. There is no evidence of the officers' arbitrary or abusive

---

[17]Am. Comp. 05-127 ¶¶ 1, 49, 50.

[18]Am. Comp. 05-127 ¶ 49, 50. Although not articulated in his pleadings or by his counsel at oral argument on these motions, Alfred, Jr. apparently argues the provision, "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law," U.S. Const., Amend. 14, § 1, barred the officers from handcuffing him and confining him in a police car as part of the officers' alleged efforts to cover up the alleged unjustified shooting of Alva.

7

conduct in restraining his liberty, unjustified by legitimate law enforcement objectives, which shocks the conscience. Only the most egregious official conduct has been held "arbitrary" in the constitutional sense. *County of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998); *Miller v. City of Philadelphia*, 174 F.3d 368, 374-75 (3d Cir. 1999). The constitutional concept of "conscience shocking" simply does not apply here where there is no evidence whatsoever of brutality, indifference, deliberate indifference, or any other type of egregious conduct intended by the officers to harm. *See County of Sacramento*, 523 U.S. at 852-54 (discussing requisite level of culpability). There is evidence the officers, responding under the pressure of threats of violence to themselves as well as others, acted responsibly to take care of Alfred, Jr.'s safety and general well-being.

Moreover, Alfred, Jr. states no Fifth Amendment takings claim, alleging only personal injuries and economic losses from those injuries. *See Jones v. Philadelphia Police Dep't*, 57 Fed.Appx. 939, 940-41 (3d Cir. 2003) ("there can be no takings claim for damage to one's body, as the United States may not legally "take" its citizens' bodies, even if it compensates them").

The Eighth Amendment ban on cruel and unusual punishments is not implicated, as alleged by Alfred, Jr., who was never charged and convicted of any crimes. Eighth Amendment protections do not attach until after conviction and sentence. *Ingraham v. Wright*, 430 U.S. 651, 671, n. 40 (1977).

Alfred, Jr.'s allegations boil down to claims cognizable only under the Fourth Amendment. A free citizen's claim that law enforcement officials used excessive force in the course of making an arrest or other "seizure" of his person are properly analyzed under the Fourth Amendment's "objective reasonableness" standard, rather than a substantive due process standard. *Graham v. Connor*, 490 U.S. 386, 388, 394-95 (1989); *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d

Cir. 1995). Summary judgment as a matter of law is appropriate here because a reasonable jury could not find the officers acted unreasonably or used excessive force in their restraint of Alfred, Jr.

The threshold question is "'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" *Donahue v. Gavin*, 280 F.3d 371, 378 (3d Cir. 2002) (quoting *County of Sacramento*, 523 U.S. at 841 n. 5). Section 1983 does not create substantive rights; rather it provides a remedy for deprivations of rights established elsewhere in the Constitution or federal laws. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). A prima facie case requires a plaintiff to show: (1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state or territorial law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Alfred, Jr. fails to show Defendants deprived him of any federal rights.

There is no dispute there was a "seizure" within the meaning of the Fourth Amendment when the officers handcuffed Alfred, Jr. and confined him in a police car. *Terry v. Ohio*, 392 U.S. 1, 16 (1968) ("It is quite plain that the Fourth Amendment governs 'seizures' of the person which do not eventuate in a trip to the station house and prosecution for crime - 'arrests' in traditional terminology. It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' the person."). Defendants do not contend otherwise, and the record demonstrates he was not free to leave until officers released him from the car. The dispute therefore involves the constitutionality of his "seizure."

The Fourth Amendment protects against "unreasonable" seizures.[19] The test of

---

[19]The Fourth Amendment, applicable to the States through the Fourteenth Amendment, *Mapp v. Ohio*, 367 U.S. 643 (1961), provides: "The right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue but

reasonableness is whether, under the totality of the circumstances, the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations. *Graham*, 490 U.S. at 397. Thus, the officers' motives, whether improper or proper, are immaterial and irrelevant. *Id*. Moreover,

> [t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . . The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation.

*Graham*, 490 U.S. at 396-97; *see Whitley v. Albers*, 475 U.S. 312, 320 (1986) (noting courts should not "critique in hindsight decisions necessarily made in haste, under pressure, and frequently without the luxury of a second chance").

In making a determination of reasonableness, the severity of the crime at issue and whether the suspect poses an immediate threat to the safety of officers or others are among the factors to be considered. *Graham*, 490 U.S. at 396. Consideration should be given to the possibility that other persons subject to the police action are themselves violent or dangerous, the duration of the action, the possibility that someone may be armed, and the number of persons with whom the police officers must contend at one time. *Estate of Smith v. Marasco*, 318 F.3d 497, 515 (3d Cir. 2003) (citing *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997)). In assessing the officers' reasonableness here, one cannot ignore the immediate, severe threats posed by Alva firing his gun with many people in the house, and by Alfred, Jr., a civilian and emotionally vulnerable family member, seeking to handle the situation himself.

---

upon probable cause . . . ."

Every arrest, and every seizure having the essential attributes of a full-fledged arrest, even if no formal arrest is made, must be supported by probable cause to withstand Fourth Amendment scrutiny. *Michigan v. Summers*, 452 U.S. 692, 700 (1981); *Dunaway v. New York*, 442 U.S. 200, 212-14 (1979). Summary judgment can be granted in an appropriate case on probable cause. *Estate of Smith*, 318 F.3d at 514-15; *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997); *Deary v. Three Un-Named Police Officers*, 746 F.2d 185, 192 (3d Cir. 1984).

Alfred, Jr.'s handcuffing and confinement in the police car is tantamount to a full-scale arrest requiring probable cause. *California v. Hodari D.*, 499 U.S. 621, 626 (1991) (arrest occurs by means of physical force, no matter how slight, or submission to officer's assertion of authority); *United States v. Myers*, 308 F.3d 251, 255 n. 7 (3d Cir. 2002) (arrest occurred during investigation inside a home when person was ordered to the floor and handcuffed).

"Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." *Id.* at 255 (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)); *Orsatti v. N. J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995). Probable cause for an arrest without a warrant is

> is fundamentally a factual analysis that must be performed by the officers at the scene. It is the function of the court to determine whether the objective facts available to the officers at the time of arrest were sufficient to justify a reasonable belief that an offense was being committed.

*United States v. Glasser*, 750 F.2d 1197, 1206 (3d Cir. 1984), *cert. denied*, 471 U.S. 1018, 471 U.S. 1068 (1985) (citing *Beck*, 379 U.S. at 96)).

Summary judgment is appropriate here because a jury could not reasonably find the officers

lacked probable cause to handcuff and restrain Alfred, Jr. The proper question is not whether he in fact committed an offense, but rather whether the arresting officer reasonably believed he committed the offense. *Groman*, 47 F.3d at 634. Deputy Chief Fahie reasonably believed and therefore had probable cause to arrest Alfred, Jr. for interfering and obstructing the officers' efforts to discharge their duties,[20] and disobeying a direct order of a police officer.[21]

In addition to the requirement of probable cause, "'[a] search or seizure executed without a warrant on a suspect's premises is *per se* unreasonable, unless the police can show that it falls within one of a carefully defined set of exceptions.'" *Illinois v. Rodriguez*, 497 U.S. 177, 191 (1990) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 474 (1971). One such exception is for exigent circumstances. A warrant may be dispensed with where "'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) (quoting *Mincey*

---

[20] 14 V.I.C. § 1508 provides:
> Whoever willfully resists, delays or obstructs any public officer in the discharge, or attempt to discharge any duty of his office, shall, when no other punishment is prescribed by this title, be fined not more than $500 or imprisoned not more than 1 year, or both.

*See Gov't of the Virgin Islands v. Gilliam*, 17 V.I. 14, 20, 1980 V.I. Lexis 100 (Terr. Ct. St. C. 1980) (a § 1508 offense requires "acts clearly indicating an intention on the part of the accused to prevent the officer from performing his duty").

Under Virgin Islands law, an officer may conduct a warrantless arrest for a misdemeanor only if the offense is committed in the presence of the officer. 5 V.I.C. § 3562(1) ("A peace officer may make an arrest in obedience to a warrant delivered to him, or may, without a warrant, arrest a person - (1) for a public offense committed or attempted in his presence . . .").

[21] 14 V.I.C. § 883 provides in pertinent part:
> Whoever disobeys the lawful orders of any police officer . . . shall be fined not more than $200 or imprisoned not more than 1 year, or both.

*See Gilliam*, 17 V.I. at 19 (force is not an essential element of § 883 offense).

*v. Arizona*, 437 U.S. 385, 394 (1978). *See Payton v. New York*, 445 U.S. 573, 590 (1980) ("In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold cannot be crossed without a warrant."); *Katz v. United States*, 389 U.S. 347, 357 (1967) ("searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment - subject only to a few specifically established and well-delineated exceptions." (footnotes omitted)); *Estate of Smith*, 318 F.3d at 518 ("a warrantless seizure in a person's home violates the Fourth Amendment unless both probable cause and exigent circumstances are present").

Here, there were exigent circumstances justifying the officers' warrantless entry and search of the Lockhart residence, and their handcuffing and confinement of Alfred, Jr. in the police car. The Third Circuit has held "[e]xigent circumstances exist where 'officers reasonably . . . believe that someone is in imminent danger,'" *Couden v. Duffy*, 446 F.3d 483, 496 (3d Cir. 2006) (quoting *Parkhurst v. Trapp*, 77 F.3d 707, 711 (3d Cir. 1996)), and the police otherwise have probable cause to search, *Parkhurst*, 77 F.3d at 711. There are exigent circumstances if the safety of law enforcement or the general public is threatened. *Estate of Smith*, 318 F.3d at 518 (citing *Warden v. Hayden*, 387 U.S. 294, 298-300 (1967) (exigent circumstances existed where safety of officers was in jeopardy)). *See also United States v. Parris*, 229 Fed.Appx. 130 (3d Cir. 2007) (where police received 911 call reporting a gun fired inside a home with children present, warrantless entry supported by exigent circumstances); *United States v. Mitchell*, 175 Fed.Appx. 524 (3d Cir.), *cert. denied*, 548 U.S. 918 (2006) (police were justified if not compelled to enter home after receiving report of shooting and seeing drops of blood on sidewalk and front steps).

The totality of the circumstances facing the officers, and reasonably discoverable information available to the officers at the time they acted, determines whether there were exigent circumstances. *United States v. Rubin*, 474 F.2d 262, 268 (3d Cir.), *cert. denied*, 414 U.S. 833 (1973); *United States v. Sculco*, 82 F. Supp.2d 410, 417 (E.D. Pa. 2000).

Here, the totality of the exigencies justified Alfred, Jr.'s warrantless seizure. Officers responded to 911 reports of gunshots in a home. They reasonably believed Alva had fired a gun during a volatile, potentially violent domestic dispute, with children and family "hostages" at risk. From their perspective as trained police officers at the time, they prudently believed everyone present was threatened with grave bodily injury. Alfred, Jr. intervened after an officer had fired his gun at the armed suspect, Alva. Alfred, Jr. did so when the officers were unable to locate and communicate with Alva inside the house, which only heightened their concern. They reasonably believed Alfred, Jr. would persist in aggravating evident threats to his own safety, and the safety of the officers, and others.

Case law dealing with similar situations supports the conclusion Alfred, Jr.'s arrest was justified by probable cause and exigent circumstances as a matter of law. The Supreme Court has held officers executing a search warrant may lawfully detain occupants at the searched premises in order the minimize the risk of harm to officers and occupants by exercising "unquestioned command of the situation." *Summers*, 452 U.S. at 702-03, 705 ("[A] warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." (footnotes omitted)). The Third Circuit is in accord. *Torres v. United States*, 200 F.3d 179, 182, 185-86 (3d Cir. 1999) (finding use of drawn guns and handcuffs reasonable during course of a warranted search estimated to last from one and one-half

14

to three hours); *Jones*, 57 Fed.Appx. at 941 (holding officers did not violate Fourth Amendment by detaining innocent bystanders during a lawful search for a reasonable period, under reasonable conditions, to protect their safety and the safety of officers).

A reasonable jury could not find Alfred, Jr. suffered any violation of his Fourth Amendment rights because his arrest was justified by probable cause and exigent circumstances. Therefore, he has no independent claim for false imprisonment. *Baker*, 443 U.S. at 143-44 (holding valid arrest based on probable cause and exigent circumstances, conforming to Fourth Amendment requirements, does not give rise to a separate claim under § 1983 for false imprisonment pursuant to that arrest); *Groman*, 47 F.3d at 636 ("*Baker* made it clear an arrest based on probable cause could not become the source of a claim for false imprisonment."). Therefore, the exact time of Alfred, Jr.'s release from the police car for purposes of applying the statute of limitations is immaterial. He has not demonstrated any deprivation of a constitutional right at all.

In these consolidated actions, Plaintiffs argue Defendants engaged in a conspiracy to deprive them of rights guaranteed under § 1983. The Estate alleges Defendants conspired to violate Alva Lockhart's civil rights by "allowing him to bleed to death,"[22] covering-up his unjustified shooting by Officer George Greene,[23] rearranging the scene of the shooting;[24] "ransacking" the Lockhart residence,[25] and submitting false police reports.[26] The remaining Plaintiffs, including Alfred, Jr.,

---

[22] Am. Comp. 05-126 ¶¶ 36, 53.

[23] Am. Comp. 05-126 ¶¶ 35, 52-59.

[24] Am. Comp. 05-126 ¶¶ 36, 52-59.

[25] Am. Comp. 05-126 ¶¶ 38, 39, 41, 52-59.

[26] Am. Comp. 05-126 ¶¶ 41, 53, 55.

advance the same conspiracy theory, alleging no separate conspiracy to violate their own personal constitutional rights or cover-up any of their own alleged constitutional injuries. Rather, Alfred, Jr. alleges Defendants violated his First Amendment rights by covering-up facts concerning Alva's shooting and death, which impeded his access to the courts and judicial redress.[27]

Plaintiffs' conspiracy claims are without merit. Summary judgment is appropriate on all conspiracy claims advanced by each Plaintiff because their claims are conclusory accusations, which would only invite jury speculation. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250-52; *Celotex*, 477 U.S. at 322-23. They present no genuine issues for trial. *Id*. at 324.

Moreover, Plaintiffs' claims are time-barred. The limitations period for a § 1983 civil conspiracy begins to run from "each overt act causing damage." *Kost v. Kozakiewicz*, 1 F.3d 176, 191 (3d Cir. 1993); *Wells v. Rockefeller*, 728 F.2d 209, 217 (3d Cir. 1983), *cert. denied*, 471 U.S. 1107 (1985) ("actual injury is the focal point, not the illegal agreement per se"). The cause of action accrues when the plaintiff knows and should have known his or her constitutional rights have been violated, *Kost*, 1 F.3d at 191, and is subject to the Virgin Islands' two-year statute of limitations applicable to personal injuries, 5 V.I.C. § 31(5)(A).

Plaintiffs allege the conspiracy began when Officer Greene shot Alva on August 12, 2003, and continued into and beyond August 13, 2003. To the extent Alfred, Jr. alleges Defendants violated his Fourth Amendment rights by handcuffing and confining him in a police car to facilitate their alleged cover-up of Alva's unjustified shooting, their alleged conspiratorial motives caused him no separate constitutional injury. Moreover, Defendants' conduct did not deprive him of any Fourth Amendment rights.

---

[27] Am. Comp. 05-127 ¶¶ 50, 51.

Alfred, Jr. impermissibly attempts to manufacture viable, timely civil rights injuries by tying his alleged injuries from being handcuffed and confined in a police car to alleged conspiratorial actions purportedly occurring on and after August 13, 2003, which are not supported by the record. Plaintiffs must show two or more conspirators reached an agreement to deprive him or her of a constitutional right "under color of law." *Leer Elec., Inc. v. Pennsylvania, Dep't of Labor and Indus.*, 597 F. Supp.2d 470, 484 (M.D. Pa. 2009) (citing *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 700 (3d Cir. 1993). This Alfred, Jr. has failed to do.

Alfred, Jr. alleges Defendants violated his own First Amendment rights by a conspiratorial cover-up of facts concerning Alva's injuries, thereby impeding and obstructing his own ability to pursue claims for his own constitutional injuries and personal injuries. His First Amendment claims, however, are not actionable for the same reason: the record is devoid of any evidence whatsoever of an agreement, or any overt act in furtherance of an agreement, to conceal the facts concerning Alva's injuries.

The record is devoid of any evidence Defendants' actions prevented Alfred, Jr. from filing suit or rendered his access to the courts ineffective or meaningless. "Cover-ups that prevent a person who has been wronged from vindicating his rights violate the right of access to the courts protected by the substantive due process clause." *Estate of Smith*, 318 F.3d at 511 (collecting authority). Despite the breadth of this general rule, a plaintiff cannot recover a constitutional remedy for cover-ups or discovery abuses after an action has been filed because the trial court can address those problems in on-going litigation. *Id.* at 511 ("[O]nly prefiling conduct that either prevents a plaintiff from filing suit or renders the plaintiff's access to the court ineffective or meaningless constitutes a constitutional violation." (citing *Foster v. City of Lake Jackson*, 28 F.3d 425, 430 (5ht Cir. 1994)

17

(suggesting the right of access to the courts encompasses a "a right to file an action, but not the right to proceed free of discovery abuses after filing")).

Alfred, Jr. filed suit on August 15, 2005, albeit one business day after the two-year limitation period prescribed for personal injury claims. There is no evidence Defendants were responsible for his filing delay. Moreover, there is no reason to believe any purported lack of information concerning Alva's shooting precluded Alfred, Jr. from timely and fully asserting claims for his own injuries.

Alfred, Jr.'s common law tort claims for negligence, recklessness or gross negligence, negligent training and entrustment, or negligent or intentional infliction of mental distress are time-barred by the Virgin Islands two-year limitation period, 5 V.I.C. § 31(5)(A).[28] *Charleswell v. Chase Manhattan Bank, N.A.*, 308 F. Supp.2d 545, 562 (D.V.I. 2004). Alfred, Jr. has failed to sufficiently support his conclusory accusations of common torts resulting in his personal injury from handcuffing on August 13, 2003. *Anderson*, 477 U.S. at 250-52. The record is equally insufficient to support a reasonable inference of any common law tort injuries occurring to any Plaintiff after August 12, 2003. After four years of litigation and adequate opportunity for discovery, Alfred, Jr. has not produced evidence to support his common law tort injuries because he cannot. *Celotex*, 477 U.S. at 324.

An appropriate order follows.

---

[28]Am. Comp. 05-127 Counts III-VII.